# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE T. WEST** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2512** |
| **CARRIE L. RIETH, ET AL.** | **SECTION I** |

## ORDER AND REASONS

The Court has before it a motion[1] filed by the United States of America to dismiss defendants, Carrie L. Rieth ("Rieth"), Erin E. Parrott ("Parrott"), Rachel J. Allen ("Allen"), and Kendra L. Johnson ("Johnson") (collectively, the "Federal Defendants") and to substitute the United States of America as a defendant in their place. Plaintiff opposes the motion.[2] The Court has received substantial supplemental briefing. For the following reasons, the motion is granted.

## BACKGROUND

Plaintiff, Luke T. West ("West"), was at all times relevant to the pending motion a service member in the United States Marine Corps. West alleges that the Federal Defendants, who with one exception were also U.S. Marine Corps service members at all relevant times, conspired to lodge false complaints and accusations of sexual harassment and sexual assault against him. According to the complaint, such false allegations were personally motivated by a desire to remove West and another individual from their supervisory positions and to obtain favorable transfers.[3] Investigations ensued, and West was court-martialed with respect to the allegations lodged by Rieth, Parrott, and

---

[1] R. Doc. No. 6.
[2] R. Doc. No. 10.
[3] R. Doc. No. 1, at 5-6.

Allen. The allegation that West raped defendant Johnson was not part of the court-martial because an investigator found that such allegation was not credible.[4]

At the court-martial in November 2014, defendants Rieth, Parrott, and Allen testified under oath against West, which testimony West alleges was false. Defendant, Allen, was no longer an employee of the U.S. Marine Corps at the time of the court-martial; the undisputed record establishes that her service ended on April 26, 2014.[5]

West was found not guilty of the majority of charges arising out of the alleged sexual assault and harassment directed towards Parrott, Harper, and Rieth.[6] He was found guilty of a subset of charges based on (1) certain sexually suggestive comments made to Allen[7] and (2) obstructing justice by conspiring with another Marine to provide Allen with copies of their text messages in an attempt to influence her testimony.[8] West alleges that as he was being escorted to serve a sentence of thirty days in confinement as a result of his convictions, "defendants Rieth, Parrott, and Allen,

---

[4]R. Doc. No. 10-19, at 11-12 ("Sgt. [Johnson's] accounting of the alleged rape and predicate burglary was incomplete, unsupported by any corroboration, and inconsistent. . . . Still, on balance since Sgt. [Johnson's] testimony was not believable regarding her allegations of rape and burglary I cannot recommend going forward with *any* specifications based on this witness's testimony.").

[5]R. Doc. No. 10-3, at 21 ("I am Staff [sic] Rachel J. Allen. I left the Marine Corps on 26 April 2014."); R. Doc. No. 42-2, at 1 (stating that "Rachel Allen's period of Marine Corps service was 20100701-20140426").

[6]*See* R. Doc. No. 10-3, at 50-51; R. Doc. No. 10-20, at 19-23.

[7]Specifically, West was found guilty of (1) Charge III, Specification 4, which alleged maltreatment of Allen, a person subject to his orders based on "repeated sexually suggestive comments" in violation of Uniform Code of Military Justice article 93, 10 U.S.C. § 893; and (2) Charge V, Specification 2, which alleged "conduct prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces" in violation of Uniform Code of Military Justice article 134, 10 U.S.C. § 934. *See* R. Doc. No. 10-20, at 21, 23; R. Doc. No. 10-3, at 50-51.

[8]Specifically, West was found guilty of (1) Charge I, which alleged conspiracy to commit obstruction of justice in violation of Uniform Code of Military Justice article 81, 10 U.S.C. § 881; and (2) Charge V, Specification 3, which alleged "conduct prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces" in violation of Uniform Code of Military Justice article 134, 10 U.S.C. § 934. *See* R. Doc. No. 10-20, at 19, 23; R. Doc. No. 10-3, at 50-51.

spit upon" him.[9]

West filed this lawsuit against the Federal Defendants on July 9, 2015, invoking the Court's diversity jurisdiction.[10] The United States responded by filing the present motion to dismiss the Federal Defendants and to substitute itself as defendant on the basis of an attached certification by the U.S. Attorney for the Eastern District of Louisiana that the Federal Defendants "were at all relevant times acting within the scope of their federal employment with the United States Marine Corps at the time of the conduct alleged in the complaint."[11]

## LAW & ANALYSIS

### A.    Applicable Law

### 1.    The Westfall Act and Government Employee Immunity

Pursuant to 28 U.S.C. § 2679, "commonly known as the Westfall Act," "federal employees [have] absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). "When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to

---

[9]R. Doc. No. 1, at 15.

[10]R. Doc. No. 1, at 1. Although the complaint does not articulate any specific legal theories, in briefing plaintiff characterizes his claims against the Federal Defendants as arising "under Louisiana state law theories of intentional tort (malicious prosecution, slander, and assault and battery)." R. Doc. No. 10, at 2.

[11]R. Doc. No. 6-3. After the government filed its motion, plaintiff filed a first amended complaint. R. Doc. No. 17. The first amended complaint specifically referred to and supplemented the original complaint by inserting new claims against new defendants, while leaving intact plaintiff's original allegations as to the Federal Defendants. Accordingly, the Court finds it appropriate to read the original and first amended complaint together with respect to the government's motion to dismiss, because the amended complaint "specifically refers to" the original complaint and cannot be read on its own without incorporation of the original complaint by reference. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Id.* at 229-30 (quoting 28 U.S.C. § 2679(d)(1), (2)). Pursuant to regulation, the United States Attorney for the district where a lawsuit is filed may make the scope-of-employment certification. 28 C.F.R. § 15.4(a). "Upon . . . certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." *Osborn*, 549 U.S. at 230. "The litigation is thereafter governed by the Federal Tort Claims Act (FTCA)." *Id.* (citation omitted).

The U.S. Attorney's "scope-of-employment certification is subject to judicial review." *Id.*; *accord Williams v. United States*, 71 F.3d 502, 505 (5th Cir. 1995). Although the scope-of-employment certification is not "*prima facie* evidence," the burden of proof is on the "plaintiff to show that the defendant's conduct was not within the scope of his or her employment." *Williams*, 71 F.3d at 506. The Court must determine "that the employee[s], *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of their employment." *Osborn*, 547 U.S. at 231 (emphasis in original).[12]

### 2.    Louisiana Law Regarding Course and Scope of Employment

Judicial review of the scope-of-employment certification "requires the application of the law of the state in which the employee's conduct occurred." *Williams*, 71 F.3d at 505. All parties agree

---

[12]The Fifth Circuit did not specify the quantum of proof required to constitute such a showing. In *Osborn*, the Supreme Court explained that the scope-of-employment certification is effective and the government "must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." 549 U.S. at 231. This requirement that the Court determine what in fact happened suggests a finding of fact by a preponderance of the evidence, and neither party has suggested that a greater or lesser burden of proof should apply.

4

that Louisiana law governs the course-and-scope issue in this case.[13]

"In Louisiana, 'generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.'" *White v. United States*, 419 F. App'x 439, 442 (5th Cir. 2011) (quoting *Orgeron v. McDonald*, 639 So. 2d 224, 226-27 (La. 1994)) (alteration omitted). "In other words, the issue is whether 'the tortious conduct of the employee was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business.'" *Id.* (quoting *Baumeister v. Plunkett*, 673 So. 2d 994, 997 (La. 1996)) (alteration omitted).

"Louisiana courts tend to focus on four factors: (1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *Id.* (citing *Manale v. City of New Orleans, Dep't of Police*, 673 F.2d 122, 126 (5th Cir. 1982)). "All four of these factors need not be met in a particular case." *Id.* (citing *Baumeister*, 673 So. 2d at 997). "That the 'predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.'" *Id.* (quoting *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990)). "Indeed, 'if the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service.'" *Id.* (quoting *Ermert*, 559 So. 2d at 477)) (alteration omitted). "The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment."

---

[13]R. Doc. No. 10, at 10; R. Doc. No. 23, at 8.

5

*Baumeister*, 673 So. 2d at 997.

The Fifth Circuit addressed Westfall certification, defamation, and Louisiana law in *White v. United States*, 419 F. App'x 439. The Court notes that such decisions are fact-intensive and *White* is not directly applicable to the facts here. However, the court in *White* suggested that an allegedly defamatory statement by a government employee might not be within the course and scope of employment if such statement was made solely on the basis of a "personal vendetta" and it was not motivated "at least to an appreciable extent" by serving the government employer. *See id.* at 443.

**B.    Analysis**

The issue is whether West has satisfied his burden of proof relative to the U.S. Attorney's scope-of-employment determination and whether he has sufficiently demonstrated that any of the Federal Defendants' "conduct was not within the scope of [their] employment." *White*, 419 F. App'x at 442. Many factors relevant to this factual analysis are not seriously disputed, such as the employment relationships between West and the Federal Defendants, the fact that the allegations were made, the fact that West was court-martialed on the basis of many of those allegations, and the outcome of the court-martial. The Court finds it efficient to group the extensive briefing as to these issues into three disputed areas: (1) the fundamental factual disagreement between West and the government as to whether the Federal Defendants falsely incriminated West regarding the alleged sexual assault and sexual harassment; (2) the undisputed fact that Allen's employment with the Marines ended before she testified against West at the court-martial; and (3) the allegation that three defendants spit on West after his court-martial.

**1)    The Certification and the Alleged Falsity of the Allegations**

According to the government, the Federal Defendants, as employees of the Marine Corps,

"*were required* to take the actions necessary to report and address any issue of sexual harassment and/or sexual assault with the appropriate United States Marine Corps officials."[14] The government also argues that the U.S. Attorney's certification "was appropriate because a determination had been made by the appropriate federal officials that there was enough credible evidence that the named Federal Defendants were the victims of workplace sexual harassment and/or sexual assault to refer charges to the General Court Martial."[15] The implicit premise of the government's argument in support of the scope-of-employment certification is that the Federal Defendants had a legitimate basis for reporting that West sexually assaulted and/or sexually harassed them and then testifying to those allegations at the subsequent court-martial.

The government is plainly correct that reporting sexual harassment and/or sexual assault by another Marine is within the reporting Marine's course and scope of employment. Both parties have submitted Department of Defense documentation regarding the programs established to facilitate the reporting of such allegations, which documentation establishes that the military's "goal is a culture free of sexual assault, through an environment of prevention, education and training, response capability . . . , victim support, reporting procedures, and appropriate accountability."[16] West concedes that "sexual assault on a service member is disruptive and destructive to the military and violates its core values in a fundamental way."[17]

---

[14] R. Doc. No. 23, at 2 (emphasis added); *see also* R. Doc. No. 23, at 9 ("It can clearly be reasoned that the Federal Defendants had an obligation to report acts of sexual harassment and/or sexual assault, and their actions in doing so were employment rooted, and incidental to the performance of the Federal Defendants' duties as members of the United States Marine Corps.").

[15] R. Doc. No. 23, at 5.

[16] *See* R. Doc. No. 10-2, at 3; R. Doc. No. 23-2, at 1 ("[S]exual harassment is prohibited. . . . Sexual harassment devalues the individual and threatens unit cohesion. It has no place in the Marine Corps.").

[17] R. Doc. No. 10, at 22.

The Court agrees that reporting sexual assault and/or sexual harassment would plainly be "primarily employment rooted" and "reasonably incidental to the performance of the employee's duties." *See White*, 419 F. App'x at 442. Likewise, use of a system expressly created by the Marine Corps to receive and handle such complaints is sufficiently "on the employer's premises" and "during the hours of employment" to satisfy those factors, as would be testimony by a Marine at a court-martial instigated by such reports.

However, West alleges that the underlying allegations against him were fabricated, and that making *false* reports of sexual assault and testifying *falsely* as to those allegations cannot be characterized as within the scope of the employment of a U.S. Marine Corps service member.[18] West forcefully argues that completely false allegations made by one Marine against another solely on the basis of a personal vendetta and for personal gain would not be "reasonably incidental to the performance of the employee's duties," nor could such statements have "the purpose of serving the master's business . . . to any appreciable extent." *Id.*[19]

If such argument is to have legs, the U.S. Attorney's scope-of-employment certification depends on an underlying factual issue about which the parties disagree: whether the Federal Defendants falsely incriminated West. As a result, to challenge the certification and to show that the Federal Defendants acted outside the course and scope of their employment, West has the burden

---

[18]R. Doc. No. 10, at 20-21.

[19]The Court declines to attribute any weight to an arguably contrary holding in *Stewart v. United States*, No. 13-3610, 2014 WL 1032017, at *2-3 (D. Md. Mar. 6, 2014), which case did not apply Louisiana law. Rather, the Court notes that the Fifth Circuit's decision in *White* implicitly recognized the possibility that a plaintiff can defeat a course-and-scope certification by proving that a tortious statement was made solely as a result of a "personal vendetta" and that it was not motivated to any "appreciable extent" by the purpose of serving the government employer. *See* 419 F. App'x at 443.

to establish that, as a factual matter, the allegations against him were *false*.

The Court concludes that West has not submitted sufficient evidence to meet this burden. First, it is notable that West has not submitted an affidavit or sworn statement denying the allegations against him. The assertions that the allegations were false are contained in his complaint, amended complaint, and briefing, none of which are sworn or verified. However, the Court must determine "that the employee[s], *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of their employment." *Osborn*, 547 U.S. at 231 (emphasis in original). In what is essentially a "he-said/she-said" situation, West has not provided the Court with a sworn version of what he said.

Second, the fact that West was found not guilty of many of the charges at the court-martial is not conclusive evidence that the allegations were false. The applicable burden of proof at a court-martial is proof of guilt "beyond reasonable doubt." 10 U.S.C. § 851(c). It is well settled that acquittal on charges that must be proved beyond a reasonable doubt does "not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *E.g.*, *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361-62 (1984). Such acquittal "does not negate the possibility that a preponderance of the evidence could show that" the defendant committed the charged acts. *Id.*

Third, the evidence West actually submitted in opposition to the government's motion is thin. He relies primarily on purported weaknesses or "material inconsistenc[ies]" in the statements and testimony of the Federal Defendants.[20] Moreover, portions of West's arguments do not dispute what occurred, but rather dispute whether it constituted sexual harassment. For example, West admits that

---

[20]R. Doc. No. 10, at 7-14.

he made "off-color comment[s]" to Allen on two occasions, which concession demonstrates that at least some of the allegations against him had a basis in fact, notwithstanding West's present contention that Allen "was not overly concerned" by his comments at the time.[21] West also refers to investigative reports in which an individual concluded that Johnson's allegation of sexual assault was "not believable,"[22] and that such individual was "slightly less convinced" by the testimony before recommending that a court-martial be convened.[23]

The Court concludes that West's evidence consists of factual nitpicking, his personal "spin" on facts which equally tend to suggest that some of the allegations were well-founded, and secondhand credibility determinations. His submission falls well short of carrying his burden to establish as a factual matter that the allegations lodged against him by the Federal Defendants were false and, therefore, could not have had "the purpose of serving the master's business . . . to *any* appreciable extent." *White*, 419 F. App'x at 442 (quoting *Ermert*, 559 So. 2d at 477) (emphasis added). Accordingly, the Court concludes that West has not carried his burden to show that the disputed statements and testimony by the Federal Defendants were made outside the course and scope of their employment, with one possible caveat as to a portion of Allen's alleged conduct, which the Court will discuss below.

### 2)      Certification As to Allen For Conduct After Her Employment Ended

As explained above, West has not established as a factual matter that Allen or any of the other Federal Defendants acted outside the course and scope of employment in connection with allegations that West committed sexual harassment and/or sexual assault. However, the undisputed

---

[21]R. Doc. No. 10, at 10.

[22]R. Doc. No. 10-19, at 11. Such allegation was not part of West's court-martial.

[23]R. Doc. No. 10-20, at 13.

record, as clarified and supplemented by the parties, establishes that Allen's employment with the U.S. Marine Corps ended on April 26, 2014, after she made her allegations against West but before she testified against West at his court-martial in November 2014. Accordingly, West contends that Allen cannot have been acting within the course and scope of employment when she testified against him at the court-martial because she was no longer a government employee.

The government represents, and West does not dispute, that Allen was subpoenaed to testify at the court-martial. Nothing in the record suggests that Allen's testimony at the court-martial was inconsistent with the allegations she lodged while she was employed. The court-martial was the culmination of the investigation prompted by the allegations lodged by Allen and the other Federal Defendants. Accordingly, Allen's conduct towards West constitutes a singular course of action, punctuated by the fact that her employment happened to end before her testimony at the court-martial. Other than that fact, Allen is situated identically to the other Federal Defendants.

Consequently, the issue is whether, pursuant to Louisiana law, the fortuitous occurrence that Allen's employment ended before the investigation and court-martial process reached its conclusion should affect whether Allen should be considered to have been acting within the course and scope of her employment by the U.S. Marine Corps with respect to the entirety of her alleged tortious conduct. Neither party has cited Louisiana authority directly addressing whether an employee's allegedly tortious post-employment conduct can nonetheless "relate back" to the period of employment.

In *Cowart v. Lakewood Quarters Ltd. Partnership*, cited by the government, the issue was the employer's vicarious liability for a subordinate's attack on her supervisor immediately after an "attempted termination" of the subordinate. *See* 961 So. 2d 1212, 1215. The court found that the

tortfeasor remained an employee "for the duration of this transaction" and, based on the facts of that case, it also found vicarious liability because "there was no appreciable passage of time between the remarks . . . regarding her termination and [her] unprovoked attack on her supervisor." *Id. Cowart* suggests that tortious action may be within the course and scope of employment "for the duration of [an allegedly tortious] transaction" even beyond the technical end of the employment relationship. However, the duration of the "transaction" in *Cowart* was much shorter than the months that passed between Allen's end of employment and her testimony at the court-martial.[24]

In *Parmer v. Suse*, cited by West, the court held that a defendant was not vicariously liable for the actions of a former officer who had been terminated months before he allegedly assaulted the plaintiff. *See* 657 So. 2d 666, 669 (La. App. 1 Cir. 1995). *Parmer* tends to suggest that a post-employment tort is not within the course and scope of that former employment. However, the tort in *Parmer* was an isolated physical assault which occurred completely after the end of the employment relationship. *See id.* at 667-68. Here, the alleged tortious conduct by Allen began while she was employed by the Marine Corps and continued through the end of her employment to her testimony at the court-martial.

In the absence of a Louisiana case directly on point, the Court looks to the principles applied by Louisiana courts when deciding questions of course and scope of employment. As the Louisiana Supreme Court has explained,

> Determination of the course and scope of employment is largely based on policy. The risks which are generated by an employee's activities while serving his employer's interests are properly allocated to the employer as a cost of engaging in the enterprise. However, when the party (the alleged employer) upon whom vicarious

---

[24]Of course, Allen had no control over the date on which she was ordered to appear pursuant to a subpoena.

> liability is sought to be imposed had only a marginal relationship with the act which generated the risk and did not benefit by it, the purpose of the policy falls, and the responsibility for preventing the risk is solely upon the tortfeasor who created the risk while performing the act.

*Reed v. House of Decor, Inc.*, 468 So. 2d 1159, 1168 (La. 1985). As noted above, Louisiana courts also consider the *LeBrane* factors: "(1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *White*, 419 F. App'x at 442.

As noted above, the *LeBrane* factors are satisfied as to Allen's allegations against West made while she was employed by the Marine Corps. Nothing in the record suggests that her allegations subsequently changed or that her testimony at the court-martial was inconsistent with her prior allegations. Furthermore, Allen would not have testified at the court-martial unless she had previously made those allegations in the course and scope of her employment, and her testimony at the court-martial was compelled by subpoena rather than voluntary. Accordingly, the Court concludes that pursuant to Louisiana law, Allen's post-employment conduct was also within the course and scope of her former employment as part of the entire allegedly tortious "transaction." *Cf. Cowart*, 961 So. 2d at 1215. Considering the alleged tortious "transaction" as a whole to be within the course and scope of Allen's employment, even though Allen's employment technically ended in the middle of the transaction, is consistent with Louisiana's policy of allocating risk for the purposes of determining course and scope of employment.  The Court concludes that the U.S. Attorney's course-and-scope certification should be upheld in its entirety with respect to defendant, Allen, including Allen's conduct occurring after April 26, 2014.

13

### 3)    The Spitting Allegations

Finally, the Court finds that West has failed to carry his burden with respect to his allegation that Parrott, Rieth, and Allen spit on him following the court-martial.[25] At a telephone status conference with the parties, the government did not take the position that spitting on West, if it occurred, would have been within the course and scope of the Federal Defendants' employment. But West presents no competent evidence which could permit the Court to find that this incident actually occurred. Rather, the allegation is contained solely in his unsworn complaint. Accordingly, he has not demonstrated as a factual matter that such conduct occurred at all. *See Osborn*, 549 U.S. at 231 (explaining that the certification is effective "unless and until the District Court determines that the employee[s], *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of their employment") (emphasis in original).

### 4)    Conclusion

The Court does not find that an evidentiary hearing is warranted. *See Simon v. Bell*, 2011 WL 1233048, at *7 (S.D. Tex. Mar. 31, 2011) (noting that "there is no requirement that a court conduct an evidentiary hearing or permit discovery prior to ruling on the scope of employment issue"). Although West has requested such a hearing,[26] he has not indicated what evidence or testimony he would elicit at such a hearing or articulated how such a hearing would benefit the Court in reaching its decision.

Finally, in a surreply, West contends that Rieth and Parrott should not be dismissed because his amended complaint should be construed as asserting *Bivens* claims against those defendants,

---

[25]R. Doc. No. 1, at 15. West does not allege that Johnson spit on him.
[26]West does not request discovery relative to these issues. R. Doc. No. 27, at 3.

which claims would not be subject to dismissal pursuant to the government's motion.[27] Alternatively, West requests leave to file a second amended complaint to assert federal law claims against Parrott and Rieth.[28]

West has previously characterized his claims against Rieth and Parrott as arising only under state law.[29] Rieth and Parrott are immune to such state-law claims for the reasons explained above. Under these circumstances, the Court finds it appropriate to dismiss Rieth and Parrott as defendants at this time and grant West leave to file a second amended complaint articulating any claims against Rieth or Parrott that he contends are viable in light of this order and reasons. Such amended complaint may be filed on or before **Monday, January 4, 2015**.

## CONCLUSION

**IT IS ORDERED** that the government's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants, Carrie L. Rieth, Erin E. Parrott, Kendra L. Johnson, and Rachel J. Allen, are **DISMISSED** for lack of subject matter jurisdiction. The United States of America is **SUBSTITUTED** as defendant in their place.

---

[27]R. Doc. No. 52, at 1-2.
[28]R. Doc. No. 52, at 2.
[29]R. Doc. No. 10, at 2 ("On July 9, 2015, plaintiff filed this lawsuit against the defendants, in their individual capacities, under Louisiana state law theories of intentional tort . . . .").

**IT IS FURTHER ORDERED** that West may file a second amended complaint on or before

**Monday, January 4, 2016**.

New Orleans, Louisiana, December 22, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

16