UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE T. WEST** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2512** |
| **CARRIE L. RIETH, ET AL.** | **SECTION I** |

## ORDER AND REASONS

The Court has before it a motion[1] filed by the United States of America to dismiss plaintiff's *Bivens* claims against defendants, Carrie L. Rieth ("Rieth"), Erin E. Parrott ("Parrott"), Margaret Cuevas ("Cuevas"),[2] Lindsay Bartucco ("Bartucco"), and Shanda Stucker ("Stucker"). Plaintiff opposes the motion[3] and the Court has received reply briefs.[4] For the following reasons, the motion is granted.

## BACKGROUND

Plaintiff, Luke T. West ("West"), was at all times relevant to the pending motion a service member in the United States Marine Corps.[5] West alleges that Rieth and Parrott, who were also U.S.

---

[1] R. Doc. No. 85.
[2] The first and second amended complaints name Peggy Cuevas as a defendant. R. Doc. No. 17, at 2; R. Doc. No. 59, at 5. In the motion to dismiss, counsel for defendants represent that service was accepted on behalf of Margaret "Peggy" Cuevas. R. Doc. No. 85-1, at 1 n.1. In his opposition, plaintiff refers to movant as Margaret Cuevas, R. Doc. No. 93, at 1, and accordingly there appears to be no dispute that Margaret Cuevas has been correctly identified and is properly before this Court.
[3] R. Doc. No. 93.
[4] R. Doc. Nos. 96, 99.
[5] In addition to his original complaint, plaintiff has filed first and second amended complaints that specifically referred to and supplemented the original complaint with additional factual allegations and claims while leaving intact plaintiff's original allegations. R. Doc. No. 17, at 1; R. Doc. No. 59, at 1. The Court finds it appropriate to read the original, first amended, and second amended complaints together, because both amended complaints "specifically refer to" the original complaint and cannot be read on their own without incorporation of the original complaint by

1

Marine Corps service members at all relevant times, conspired with others to lodge false complaints and accusations of sexual harassment and sexual assault against him. According to the complaint, such false allegations were personally motivated by a desire to remove plaintiff and another individual from their positions and to obtain favorable transfers.[6] The allegations included that "plaintiff had sexually assaulted [Rieth] at the Marine Corps Ball in November of 2011 by massaging her thigh at the Finance Section leadership table for approximately 2 minutes," and that plaintiff "sexually assaulted [Parrott] by grabbing her and attempting to kiss her in two specific instances, first in the hallway of a hotel and then in a hotel bathroom at the MFR Marine Corps Ball in November of 2011."[7] He alleges that these false allegations were "designed [to] take advantage of the charged political climate surrounding sexual assault allegations in the military for purely personal gain."[8]

According to the complaint, Cuevas was the "Sexual Assault Response Coordinator for Marine Forces Reserves," and Bartucco and Stucker were "civilian victim advocates for Marine Forces Reserves."[9] They are alleged to have been civilian employees working in one of the Marine Force Reserves Sexual Assault Prevention and Response [SAPR] offices, which offices are "civilian in nature, operate independently of their parent military commands, and do not answer to, and are not under the control of, those parent military commands."[10] Plaintiff alleges that Cuevas, Bartucco,

---

reference. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

[6]R. Doc. No. 1, at 5-6.
[7]R. Doc. No. 1, at 7-8.
[8]R. Doc. No. 1, at 16.
[9]R. Doc. No. 17, at 2.
[10]R. Doc. No. 17, at 3. Defendants vigorously dispute plaintiff's characterization of the role of the SAPR program within the military chain of command. R. Doc. No. 101, at 2-3. Whether that

and Stucker facilitated the filing of Rieth's and Parrott's allegations, either knowing that such allegations were false or with reckless disregard for the truth of such allegations.[11]

Investigations of Rieth's and Parrott's allegations ensued. Plaintiff alleges that Cuevas, Bartucco, and Stucker "exerted significant improper influence over Naval Criminal Investigative Services (NCIS), the civilian law enforcement agency of the United States Navy," by "prevent[ing] NCIS from investigating evidence and information exculpatory to plaintiff" and "caus[ing] NCIS to attempt to improperly intimidate plaintiff and plaintiff's witnesses, with threats of obstructing justice investigations."[12]

Ultimately, West was court-martialed in November 2014 with respect to the allegations lodged by Rieth, Parrott, and Rachel Allen ("Allen"), a previously dismissed defendant. At the general court-martial in November 2014, Rieth and Parrott, among others, testified under oath against plaintiff, which testimony plaintiff alleges was false. Plaintiff was found not guilty of the charges arising out of the alleged sexual assault and harassment directed towards Rieth and Parrott.[13] He was convicted of other charges of obstruction of justice, maltreatment of a subordinate, and use of indecent language based on his conduct towards Allen.[14] Plaintiff "was sentenced to serve 30 days in confinement and a reduction in rank from Gunnery Sergeant (E-7) to the rank of Lance Corporal (E-3)."[15] He also alleges that but for the false allegations, he "would have been eligible to accept a commission in the United States Marine Corps as a warrant officer and would have continued to

---

dispute is one of fact or law, it is immaterial to resolution of this Rule 12(b)(6) motion to dismiss.
[11]R. Doc. No. 17, at 4-5.
[12]R. Doc. No. 17, at 3.
[13]R. Doc. No. 1, at 14.
[14]R. Doc. No. 1, at 15.
[15]R. Doc. No. 1, at 15.

serve in the United States Marine Corps in that capacity."[16] Plaintiff alleges that as he was being escorted to serve his sentence, "defendants Rieth, Parrott, and Allen, spit upon" him.[17]

West filed this lawsuit against Rieth, Parrott, and two other accusers on July 9, 2015, invoking the Court's diversity jurisdiction and asserting state-law causes of action.[18] The Court subsequently granted a motion filed by the United States of America pursuant to the Westfall Act to substitute itself as defendant with respect to plaintiff's state-law tort claims.[19] Plaintiff has since amended his complaint twice to assert *Bivens* claims against Rieth, Parrott, Cuevas, Bartucco, and Stucker, alleging that their conduct violated his substantive due process rights under the Fifth Amendment to the U.S. Constitution.[20] Other than the claims as to which the United States was substituted, plaintiff's constitutional claims which are the subject of the present motion to dismiss are the only remaining claims in the above-captioned matter.

## LAW & ANALYSIS

### A. Applicable Law

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

"Factual allegations must be enough to raise a right to relief above the speculative

---

[16]R. Doc. No. 1, at 16.
[17]R. Doc. No. 1, at 15.
[18]R. Doc. No. 1, at 1.
[19]*See* R. Doc. No. 57; R. Doc. No. 80 (denying motion for reconsideration).
[20]R. Doc. No. 17, at 7; R. Doc. No. 59, at 2.

>level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

**B.   Analysis**

Plaintiff alleges that movants violated his Fifth Amendment substantive due process rights. Both plaintiff and defendants analyze these claims through the framework of the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which "established that, in certain circumstances, the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *De La Paz v. Coy*, 786 F.3d 367, 372 (5th Cir. 2015)

(internal quotation marks omitted). "A *Bivens* action is analogous to a § 1983 action; the only difference is that § 1983 claims apply to constitutional violations by state actors and *Bivens* claims apply to actions by federal officials." *Espinal v. Bemis*, 464 F. App'x 250, 251 (5th Cir. 2012) (citing *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005)). The Fifth Circuit "does not distinguish between *Bivens* claims and § 1983 claims." *Id.*

To state a *Bivens* claim, a plaintiff first must allege a constitutional violation. *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993) ("To recover damages under *Bivens*, the injured party must show the existence of a valid constitutional violation."). Then, the Court must decide whether the Fifth Circuit "has already extended *Bivens*" to include plaintiff's claims or, if not, whether "the Supreme Court's reasoning in the *Bivens* line of cases, taken as a whole," warrants extension of the *Bivens* remedy to this context. *See De La Paz*, 786 F.3d at 373.

Defendants contend that (1) plaintiff has not stated a claim for a substantive due process violation, (2) special factors counsel against extending the *Bivens* remedy to this context, and (3) in the alternative, defendants are entitled to qualified immunity.[21] For the following reasons, it is clear that even if plaintiff has stated a claim for a constitutional violation, the *Bivens* remedy has not been and should not be extended to this factual and legal context. Accordingly, the Court will focus primarily on defendants' second argument which is dispositive.

---

[21]R. Doc. No. 85-1, at 2-3. In their reply brief, defendants also raise for the first time entitlement to absolute immunity with respect to claims based on testimony at the court-martial. R. Doc. No. 96, at 9-10. Generally, a "reply memorandum is not adequate to raise entirely new arguments for dismissal." *See, e.g.*, *Ostrowiecki v. Aggressor Fleet, Ltd.*, 07-6598, 2008 WL 3285900, at *3 (E.D. La. Aug. 7, 2008) (Africk, J.) (internal quotation marks and citation omitted). However, the question is moot because the Court need not reach that issue to resolve defendant's motion and, at any rate, plaintiff has sought and received leave to respond to the argument.

### 1.) Whether *Bivens* Should Be Extended to This Context

"[S]ubsequent holdings of the Supreme Court . . . have narrowed and reframed *Bivens* in the course of rejecting nearly all other claims for an implied damage remedy against federal officers or agents." *De La Paz*, 786 F.3d at 372. Accordingly, the Supreme Court has "disavowed that a *Bivens* suit is an automatic entitlement; in fact, it is disfavored." *Id.* (internal quotation marks omitted). "Moreover, because *Bivens* suits implicate grave separation of powers concerns, a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Id.* at 372-73 (internal quotation marks omitted).

When deciding whether to extend the *Bivens* remedy, "[i]nstead of an amendment-by-amendment ratification of *Bivens* actions, courts must examine each new context—that is, each new potentially recurring scenario that has similar legal and factual components." *Id.* at 372 (internal quotation marks omitted). Accordingly, the initial question is whether the Supreme Court or the Fifth Circuit "has already extended *Bivens*" to include plaintiffs' claims. *See id.* 373. Plaintiff does not cite such a case or contend that a *Bivens* remedy already exists for his claims against these defendants.[22] Accordingly, the Court must now "apply the Supreme Court's reasoning in the *Bivens* line of cases, taken as a whole, and decide whether to extend *Bivens*." *Id.*

Deciding whether to extend *Bivens* requires a two-prong analysis. First, the Court "may not step in to create a *Bivens* cause of action if any alternative, existing process for protecting the

---

[22]Plaintiff asserts that "it is axiomatic that the protection of the integrity of the criminal justice process is inarguably within the judiciary and is, perhaps, the most appropriate area for the courts to litigate a potential Due Process Clause violation under *Bivens*." R. Doc. No. 93, at 16. Suffice it to say, plaintiff cites no case that remotely suggests that this Court's inherent authority to police its own proceedings should be extended to creating a *Bivens* remedy for matters arising out of military court-martial proceedings. To the contrary, as will be explained below, the military discipline context of this case counsels *against* extending a *Bivens* remedy.

7

interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 375. Second, "[e]ven if no such alternative process exists . . . a court must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.*

Defendants base their argument on the second prong and articulate several "special factors counselling hesitation." The Court agrees with defendants that the military context in which this matter arose conclusively counsels against extending the *Bivens* remedy into this context.

The Supreme Court has held that "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate." *United States v. Stanley*, 483 U.S. 669, 683 (1987). Accordingly, "the unique disciplinary structure of the Military Establishment and Congress' activity in the field . . . require abstention in the inferring of *Bivens* actions" to the same extent that the *Feres* doctrine prohibits claims against the government pursuant to the Federal Tort Claims Act.[23] *Id.* at 683-84 (internal quotation marks and citation omitted). It is therefore settled that "no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service." *Id.* at 684 (internal quotation marks and citations omitted); *accord Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 296 (5th Cir. 2008) ("[T]he United States Supreme Court has determined that because of *Feres*, the *Bivens* remedy is unavailable to someone whose claims arise incident to military service."). As another court recently noted, the Supreme Court has never extended *Bivens* "in the

---

[23]The *Feres* doctrine states that "'the Government is not liable under the FTCA for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.'" *Regan v. Starcraft Marine, LLC*, 524 F.3d 627, 633 (5th Cir. 2008) (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)).

military context." *Cioca v. Rumsfeld*, 720 F.3d 505, 510 (5th Cir. 2013).

Pursuant to *Stanley*, the Court must assess a proposed *Bivens* claim in the military context by applying the *Feres* test, which requires a "three-factor analysis for whether a service member's injury was incident to military service: (1) duty status, (2) site of injury, and (3) activity being performed." *Regan v. Starcraft Marine, LLC*, 524 F.3d 627, 637 (5th Cir. 2008). Assessed through these three factors, plaintiff's allegations self-evidently are "incident to military service."

Plaintiff alleges that at all relevant times, he (as well as Rieth, Parrott, Cuevas, Bartucco, and Stucker) were employed by the Marines, and plaintiff does not allege that he or any other party was on extended leave. Accordingly, all interested parties are at the very least in the middle of the "continuum between performing the tasks of an assigned mission to being on extended leave from duty." *Regan*, 524 F.3d at 637. To the extent that there is a "place" where plaintiff's alleged constitutional injury occurred, that "place" was within the framework of his military employment and the military disciplinary process, including the formal reporting, investigation, and prosecution of the allegations against him. *See id.* at 640. Likewise, the "activity being performed at the time of the injury" was the activity surrounding the formal court-martial, which undoubtedly "served some military function." *See id.* at 640. The facts plaintiff alleges are squarely incident to military service and military discipline, unlike the recreational rental boat accident in *Regan*. *See, e.g.*, *id.* at 637-42.

Plaintiff's contention that his claims did not arise "incident to military service" is not convincing. He asserts that "the allegations of sexual assault and sexual harassment took place outside of the office;"[24] however, the sexual assaults allegedly took place at a Marine Corps Ball and the subsequent accusations and court-martial were patently within the military disciplinary

---

[24]R. Doc. No. 93, at 21.

9

framework. Although he asserts that "any of these false allegations could have been made in a wholly civilian environment," plaintiff ignores that *these* allegations in *this* case were made by Marines against another Marine and resulted in a military prosecution. His assertion that "the administration and management of the processing of sexual assault claims are not particular to the military" is too simplistic to be credited.

Furthermore, the case to which plaintiff analogizes, *Lutz v. Secretary of Air Force*, 944 F.2d 1477 (9th Cir. 1991), is distinguishable. In *Lutz*, the Ninth Circuit held that defendants who allegedly "broke into [plaintiff's] office, took personal papers and disseminated them to other military personnel with the intent to injure [plaintiff's] reputation and career" were not acting "incident to military service." *See id.* at 1478-79. Notwithstanding some broad language in the Ninth Circuit's opinion, that court addressed "only the narrow question of whether injuries sustained by Lutz as a result of the sergeants entering her office after hours, opening her personal mail, and disseminating it to others in an attempt to cause harm to her reputation, are injuries which arise out of or are in the course of activity incident to service." *See id.* at 1485. On the facts of that case, the *Lutz* court found that "[i]ntentional tortious and unconstitutional acts directed by one servicemember against another which further no conceivable military purpose and are not perpetrated during the course of a military activity surely are past the reach of *Feres*" and *Stanley*. *Id.* at 1487.

*Lutz* is distinguishable because the alleged unconstitutional action in this case is much more closely intertwined with the parties' military service and the military disciplinary framework. According to plaintiff, defendants lodged or facilitated the lodging of accusations against him, which accusations were investigated and proceeded to a general court-martial. Taking plaintiff's allegations to be true, defendants' alleged manipulation or abuse of the military disciplinary framework is more

connected to "the course of a military activity" than the after-hours burglary at issue in *Lutz*. Furthermore, plaintiff's allegations in this case inherently involve collateral review of the basis for the underlying investigation and court-martial, which factor was also missing in *Lutz*. *See id.* at 1485 & n.8 (noting that claims "challenging disciplinary decisions" "have been found to fall squarely within the prohibited zone protected by *Feres*"). Accordingly, the constitutional violations alleged by plaintiff necessarily implicate "the unique disciplinary structure of the Military Establishment and Congress' activity in the field," which counsels against extending the *Bivens* remedy.

In sum, *Bivens* remedies are disfavored, *De La Paz*, 786 F.3d at 372, and the military disciplinary context of this matter particularly counsels against extending *Bivens*. *Stanley*, 483 U.S. at 683. Plaintiff's claims, as stated in his complaint, arise out of allegations by fellow Marines that he sexually assaulted and sexually harassed them, which allegations were allegedly facilitated by civilian marine employees, and resulted in plaintiff's court-martial. His claims, taken as true, are sufficiently "incident to military service" such that the military context of this matter is a "special factor" which counsels against extending the *Bivens* remedy to this factual and legal context. To conclude otherwise would be to open the floodgates to a post-court-martial *Bivens* claims. Plaintiff has therefore failed to state a viable *Bivens* claim; defendants' motion should be granted and plaintiff's claims against them should be dismissed.[25]

## C.    Effect of Granting Defendants' Motion to Dismiss

The Court previously granted an earlier motion to dismiss and substituted the United States

---

[25]As a result, the Court need not address whether plaintiff has stated a claim for a constitutional violation of his Fifth Amendment substantive due process rights as to Rieth, Parrott, Cuevas, Bartucco, or Stucker, or whether those defendants are entitled to qualified immunity.

of America as defendant with respect to plaintiff's state-law claims as to Rieth, Parrott, Allen, and Johnson.[26] Granting this motion disposes of plaintiff's *Bivens* claims against Rieth, Parrott, Cuevas, Bartucco, and Stucker. Accordingly, the only remaining claims in this matter are plaintiff's state-law tort claims against the United States as a substituted party.

"Federal courts have jurisdiction to hear suits against the government only with a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013) (internal quotation marks omitted). The Federal Tort Claims Act is a limited waiver of sovereign immunity, but such waiver does not extend to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); *see also White v. United States*, 419 F. App'x 439, 441-42 (5th Cir. 2011) (affirming substitution of the United States as defendant with respect to defamation claim and subsequent dismissal of that defamation claim on sovereign immunity grounds). Accordingly, the Court's subject matter jurisdiction over the only remaining claims is questioned.

In previous briefing, the government has indicated its intent to assert sovereign immunity,[27] but no motion to dismiss on that basis has been filed. The Court will direct filing of such a motion so as to be assured of its continuing subject matter jurisdiction.

## CONCLUSION

---

[26] R. Doc. No. 57. Although plaintiff reiterated his demand for relief as to Allen and Johnson in his second amended complaint, R. Doc. No. 59, at 4, he asserted no additional claims as to those defendants in that pleading. Accordingly, Allen and Johnson remain dismissed as defendants.

[27] R. Doc. No. 23, at 2, 7.

**IT IS ORDERED** that the motion is **GRANTED** and that plaintiff's claims against defendants, Carrie L. Rieth, Erin E. Parrott, Rachel J. Allen, Kendra L. Johnson, Margaret "Peggy" Cuevas, Lindsay Bartucco, and Shanda Stucker, are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that counsel for the United States of America may file a motion to dismiss on or before **Thursday, July 7, 2016**. Plaintiff may file a response on or before **Thursday, July 14, 2016.**

New Orleans, Louisiana, June 24, 2016.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**